*In the matter of the Petition of* JOSEPH CLYNE *for a Writ of Habeas Corpus.*

1. CRIMINAL PROSECUTION, *When Commenced.* A criminal prosecution is commenced when a warrant is duly issued and placed in the hands of a proper officer to be executed in good faith and with due diligence, and if so issued within the time limited by law for the commencement of such criminal prosecution, and executed thereafter without unnecessary delay, even though the arrest be made after the statutory limitation has run, the prosecution will still be deemed to have been commenced in time.

2. ARREST, *Delay in Making — Statutory Limitation.* Where a warrant is so issued, and where the sheriff has frequent opportunities for arresting the defendant, but fails for nearly five months to make the arrest, and the delay is at the request of the prosecuting officer, *held,* that the time of such unnecessary delay should be computed as a part of the period of limitation prescribed by the statute.

3. HABEAS CORPUS — *Discharge, no Bar to Subsequent Prosecution.* A discharge under a writ of *habeas corpus* of a defendant who has been committed for trial for a criminal offense is not a bar to a subsequent prosecution for the same offense, supported by the same and other newly-discovered evidence.

4. RES JUDICATA — *Review, When.* Where application was made by a defendant committed for trial for a felony for a discharge under a writ of *habeas corpus* to a judge of the district court, who heard and considered the evidence presented, and thereupon refused to discharge the prisoner, *held,* that this court, in its discretion, will generally decline to review the evidence and determine as to the existence of probable cause for the prosecution; but where important questions of law are presented, which must necessarily be passed on at the trial, and are decisive of the case, the court will consider and decide them.

*Original Proceeding in Habeas Corpus.*

A SUFFICIENT statement of the case is contained in the opinion herein, filed December 9, 1893.

*J. W. Rose,* for petitioner:

The petitioner claims that the warrant issued on the 23d day of January, 1893, was not issued in good faith, and was not delivered to the sheriff with the intention of having him execute it at the time that it was delivered or at any early day thereafter, but that this warrant was issued in order to stop the running of the statute of limitations. The officer in this case having the warrant respected the request and order of the county attorney, and did not execute the warrant as required by law. The mere filing of the complaint is not a sufficient bringing of an action. *In re Griffith,* 35 Kas. 377. "A suit in law is not commenced, so as to avoid the statute of limitations, until the writ is completed, with the intention of making immediate service." *Clark v. Slayton,* 1 Atl. Rep. 113; *Robinson v. Burleigh,* 5 N. H. 225; *Graves v. Ticksnor,* 6 id. 537; *Hardy v. Corlis,* 21 id. 356; *Mason v. Cheney,* 47 id. 24; *Brewster v. Brewster,* 52 id. 60.

If this is the rule in a civil case, how much more would it be in a criminal case. In order to constitute good faith, there must be an intention in delivering the writ to the sheriff to have it immediately executed. See, also, *Ross v. Luther,* 4 Cow. 158; *Burdick v. Green,* 18 Johns. 14.

Counsel for the state claim that the petitioner concealed the fact of the crime. But see *The State v. Colgate,* 31 Kas. 511.

The petitioner has been once put in jeopardy, by reason of the fact that he was discharged by Judge BAILEY on *habeas corpus* proceedings, on April 16, 1892. "Where one is discharged on *habeas corpus,* a rearrest is unlawful, the matter being *res adjudicata.*" Wells, Res. Adj. § 421. See, also, Church, Hab. Corp., § 386; 9 Am. & Eng. Encyc. of Law, p. 238; Freem. Judg., § 324; *Ex parte Jilz,* 27 Am. Rep.

218; *People v. Fairman,* 59 Mich. 568; *In re Crow,* 60 Wis. 349; *Bonnett v. Bonnett,* 61 Iowa, 199; *In re McConologue,* 107· Mass. 154.

It is submitted that, looking over the entire evidence given before the justice of the peace, there is no probable cause to believe that the defendant is guilty of the offenses charged.

*John T. Little,* attorney general, and *O. C. Jennings,* county attorney, for The State; *Valentine, Harkness & Godard,* of counsel:

A judgment or order in *habeas corpus* can never, in any proper sense, be considered as a final determination, or one that would render the matters involved therein *res adjudicata.* See Church, Hab. Corp., § 386; Whar. Cr. Pl. & Pr., § 1011; Bish. New Cr. Law, § 1014. See, also, *Ex parte Milburn,* 9 Pet. 704;· *Ex parte Powell,* 20 Fla. 806; *In re White,* 45 Fed. Rep. 237; *Walker v. Martin,* 43 Ill. 508. In *Weir v. Marley,* 99 Mo. 484, it is held:

"The doctrine of *res adjudicata* does not apply in cases of *habeas corpus* to judgments remanding a prisoner. Nor does it apply to judgments discharging a prisoner, where there is a new state of facts warranting his restraint."

We claim that the criminal proceedings against defendant Clyne are not barred by any statute of limitations, for the following among other reasons: (1) The prosecution was commenced in good faith within less than two years after the commission of the offense; (2) the fact of the commission of the offense was concealed from the public and from the public prosecutor until November 24, 1891, if not until in March, 1892; and hence all the intervening time from the time of the commission of the offense, on January 25, 1891, up to the first of the foregoing dates, if not up to the last, must be excluded from the computation of the time. Crim. Code, § 33.

The warrant under which Clyne was arrested for the second preliminary examination was issued on January 23, 1893, two days less than two years after the crime was committed,

and Clyne was arrested upon that warrant. In 1 Am. & Eng. Encyc. of Law, 184, the following language is used:

"Except in Connecticut and Vermont, the issuing or suing out of the writ is the commencement of the action. In those states the service is the commencement."

This proposition is supported by the authorities. See, also, *In re Griffith,* 35 Kas. 381, quoting from *The People v. Clark,* 33 Mich. 120. But for stronger cases than these, see the following: *Benson v. The State,* 8 South. 873; *The State v. Miller,* 11 Humph. 505; *The State v. Howard,* 15 Rich. (S. C. Law) 274, 282; *Michigan &c. Bank v. Eldred,* 130 U. S. 693; *People v. Clement,* 72 Mich. 116, 118–121, and the dissenting opinion of Judge Sherwood, and cases there cited.

In the case of *Chicago &c. Rld. Co. v. Jenkins,* 103 Ill. 588, 597, the following language is used:

"On the other hand, the books are full of cases holding the mere commencement of a suit without service within the statutory period will prevent it [the statute] from becoming a bar."

We have examined all the authorities cited by counsel for Clyne upon the question of when a criminal action shall be deemed commenced. They are not against us. They generally hold that "the date, and not the service of the writ, indicates the time when the action is commenced." *Brewster v. Brewster,* 52 N. H. 52, 60. And no one of such authorities holds that, where a writ is issued and served, as in this case, the action was not commenced at the date of the writ.

Under any definition of the word "conceal," Clyne has persistently and continuously concealed the fact of his crime. He has done so even under the peculiar definitions given by the supreme court of Indiana. But if he has not done so, for a time at least, under the circumstances of this case, then no person can ever conceal a crime, and the statute is useless. As to what the word "conceal" means, see the dictionaries, and the following among other cases: *Harper v. Pope,* 9 Mo. 398, 402; *Gerry v. Dunham,* 57 Me. 334; *Bank v. Harris,* 118 Mass. 147; *National Bank v. Perry,* 144 id. 313; *Brad-*

*ford v. McCormick,* 71 Iowa, 129; *Wilder v. Secor,* 72 id.
161; *Carrier v. Railway Co.,* 79 id. 80, 90; *Cook v. Railway
Co.,* 81 id. 551, 564; *Reynolds v. Hennessy,* 23 Atl. Rep. (R.
I.) 639, 640; *Hughes v. Bank,* 1 Atl. Rep. (Pa.) 417; *Ney v.
Rothe,* 61 Tex. 374; *Holt v. Wilson,* 75 Ala. 58.

As to the claim of the applicant that the evidence is not
sufficient to show probable cause to believe that he is guilty,
we have nothing to say. We believe the evidence is sufficient
to warrant a conviction before a petit jury. Besides, *habeas
corpus* is not the proper proceeding in which to try criminal
cases. It was not instituted for that purpose.

The opinion of the court was delivered by

ALLEN, J.: On the 18th day of March, 1892, a complaint
was filed before a justice of the peace of Stafford county,
charging the petitoner and other persons with burglariously
breaking and entering the office of the county treasurer of
Stafford county, on the 25th day of January, 1891. The
complaint contained five counts, charging burglary and grand
larceny in different forms. A warrant was issued on this
complaint, and the petitioner arrested and taken before the
magistrate who issued the warrant. Thereupon, a prelimi-
nary examination was held, and Clyne was required to give
bond for his appearance for trial, in default of which he was
committed to jail. Thereafter, on the 5th of April, 1892, a
petition was presented to Hon. J. H. BAILEY, judge of the
district court, by Clyne, asking discharge from custody. The
hearing was had, and the petitioner discharged, for the reason
that the evidence was insufficient to show probable guilt of
the accused. Afterward, on the 23d day of January, 1893,
another complaint was filed before a different justice of the
peace, charging the defendant and others with conspiring to-
gether to burglariously break and enter the county treasurer's
office, and that, in pursuance of such conspiracy, they did so
break and enter it on the 25th day of January, 1891, and did
feloniously steal money and records then kept and deposited
in said office, the property of Stafford county; the second

count charges a similar conspiracy and burglary at the same time to have been committed in the county clerk's office; the third count charges the larceny of the sum of $6,000, the property of Stafford county; and the fourth count, the larceny of books from the county treasurer's office.

On this complaint, a warrant was issued on the same day, and delivered to the sheriff. Clyne was out of the state from the 8th to the 23d of January, 1893. He returned to Stafford on the 23d. The warrant was not served until the 16th day of June, 1893, although the defendant was in Stafford county, where the sheriff could have taken him on almost any day. At the time the warrant was issued, the county attorney supposed that Clyne was out of the state, and he directed the sheriff to hold the warrant until he saw him again. It appears from the evidence of the sheriff that he saw Clyne frequently while he had the warrant in his possession, and could have made the arrest; and it further appears, that the county attorney wished the sheriff to delay service of the warrant, in order that he might find more testimony before another examination should be held. After the arrest was made under the warrant last issued, another preliminary examination was had, and the defendant again held for trial. On this examination, three witnesses not introduced on the hearing before Judge BAILEY gave the most damaging testimony which was at any time produced against the petitioner. The petitioner was committed to the jail of Reno county, there being no sufficient jail in Stafford county, and thereafter he made application to the Hon. F. L. MARTIN, judge of the ninth judicial district, for his discharge under *habeas corpus* proceedings. A full hearing was had on this application, and the petitioner was remanded to the custody of the sheriff. On his petition filed in this court, another writ has been issued, and it is sought to inquire again into the legality of his restraint.

It is contended by counsel for the petitioner, first, that the prosecution under which he is now held is barred by the statute of limitations; that notwithstanding the fact that the

warrant was issued within two years after the commission of the offense, it was not followed up with service, or an attempt at service, as the law directs. The statute requires criminal prosecutions of this kind to be commenced within two years after the commission of the offense. It also provides, that if the person committing the offense conceals the fact of the crime, the time of concealment is not to be included in the period of limitation. The legislature has nowhere provided what shall be deemed a commencement of a criminal prosecution. It was held in *In re Griffith*, 35 Kas. 377, that the mere filing of a complaint before a magistrate, charging the the party with the commission of the offense, was not such a commencement of the prosecution as to prevent the running of the statute. It was intimated in that case that the filing of the complaint, and the issuing of a warrant thereon in good faith, and the delivery to an officer to execute, was a sufficient commencement of the action to prevent the bar of the statute; but in this case we have the further question to consider, whether the defendant can, after the lapse of nearly five months, be taken into custody and prosecuted, after the filing of the complaint and issuing a warrant thereon, with a direction on the part of the county attorney—who represents the state—to the sheriff not to make present service, and where it appears that the defendant was in the county, and frequently seen by the sheriff, who had frequent opportunities to make the arrest, yet made no attempt to do so. The command of the warrant, if in the form prescribed by statute, is, that the sheriff shall forthwith arrest the defendant. May he then, at the instance of the prosecuting attorney, disobey the command of his writ, until such time as the prosecutor may feel prepared to proceed with the examination, and then make the service? Can the sheriff, merely by neglecting to promptly perform the duty enjoined upon him by law, extend the period of limitation prescribed by the legislature? and, if so, where is the limit of his authority? We have examined the cases cited by counsel for the state, and, while we find language in some of them which seems to be broad enough to

cover this case, they yet are hardly in point. We certainly are not satisfied with any such construction of the law. We think the better rule is, that the complaint must be filed and the warrant issued within the period limited by the statute; that it must be issued in good faith, and with the intention that it be presently served, and that the officer must proceed to execute it according to its command; that he must make the arrest within a reasonable time and at the first reasonable opportunity offered him. Neither the county attorney nor the sheriff, nor both together, can, by any voluntary act or by any neglect of official duty, extend the limit of the law. This is the logic of the opinion in *In re Griffith*, above cited, and is sustained by the weight of authority. (*Ross v. Luther*, 4 Cow. 158; *Clark v. Slayton*, 1 Atl. Rep. 113; *People v. Clement*, 72 Mich. 116; *Burdick v. Green*, 18 Johns. 13; *Mason v. Cheney*, 47 N. H. 244.)

1. Criminal prosecution, when commenced.

2. Arrest, delay in making— statutory limitation.

On behalf of the state, it is contended that the fact of the commission of the crime was concealed by the defendant until the 24th of November, 1891. It appears from the testimony that the fact that a burglary was committed was as well known on the morning of January 26, 1891, by the officers as it is now. The crime of burglary, if burglary was committed, was not concealed. The exceptions in the statute refer, first, to the absence from the state or concealment of the person committing the offense; second, to the concealment of the fact that a crime has been committed. They have no reference to concealment of the connection of the party sought to be prosecuted with the crime. It is almost the universal rule that parties guilty of burglary or larceny conceal their connection with the crime, as far as possible.

In this case, the defendant is charged with the crime of burglary and also with grand larceny. The person who was county treasurer at the time of the alleged offense is also charged in the complaint as having been a party to the crime. While the marks on the building and the drill holes in the

county safe, indicating that a burglary had been committed, were at once discovered, the fact that a large sum of money had been taken was not discovered until late in November thereafter. It is contended by counsel for the petitioner, that this case falls within the rule declared by this court in the case of *The State v. Colgate*, 31 Kas. 511, in which the syllabus is as follows:

"Where a grist mill and all its contents, including the books of account of the owners of the mill, are destroyed by one single fire, and the defendant is prosecuted criminally for setting fire to and burning the mill, and, on such charge, is acquitted, *held*, that such acquittal is a good defense to a subsequent prosecution for setting fire to and burning the books of account."

It will be observed that in that case there was but one act constituting the offense, and that was setting fire to the building. It was one fire. The burning of the contents of the building, including the books, were but incidents thereof. The burned books but added so much fuel to the general conflagration, and their burning followed as one of the consequences of the act of setting fire to the mill. This case has two possible aspects—one, that the burglary and larceny were committed at the same time, and as a part of the same transaction, and, if so, were connected together in such manner that if one is barred by the statute the other is also; and the other, that the crime, and the only crime really and in fact committed, was the larceny of the money; that a conspiracy was formed and entered into by the petitioner, the county treasurer and others to steal the county funds, and that the burglary was a mere pretense for the purpose of concealing the larceny. If the county treasurer was in fact implicated in such a crime, and if he voluntarily opened the doors of his office, and of the safe in which the money was kept, and, in company with his confederates, took the county money, and then, for the purpose of creating a false impression, they did those acts which indicated that a burglary had been committed, and the county treasurer, in pursuance of the con-

29—52 KAS.

spiracy, denied that any county money had been taken, and supplied a spurious draft to be counted as money in his possession, for the purpose of further concealing the fact of the crime, we think a prosecution for the larceny can be maintained at any time within two years after discovery of the fact that the money had been taken. The question as to whether a prosecution for a crime is barred by the statute of limitations is one of fact, to be determined by the jury, and should be submitted to them under proper instructions with other questions in the case.

Counsel for the petitioner further contends, that the discharge of the prisoner by Judge BAILEY, under the first writ of *habeas corpus*, constitutes a bar to any further prosecution. Authorities are cited to sustain this proposition. There may be cases where the decision by a court of controversies presented in *habeas corpus* cases amounts to an adjudication; but where a prisoner is discharged from custody for want of sufficient evidence showing probable cause for his trial for an offense with which he stands charged, such decision goes no further than a determination of the matter on the evidence then presented; and if other evidence of the defendant's guilt is afterwards found and produced, he may still be prosecuted, and the former proceeding constitutes no bar. (*Weir v. Marley,* 99 Mo. 484; Whar. Cr. Proc., § 1011; Bish. New Cr. Law, § 1014.)

3. Habeas corpus—discharge, no bar to subsequent prosecution.

Counsel for the state suggest that, while a decision of the judges before whom this matter has been heard does not constitute a bar to the proceeding in this court, yet that, where all of the facts now presented for our consideration have been presented to a district judge, having concurrent jurisdiction with this court of *habeas corpus* cases, we should decline to enter into a consideration of the merits of the case. It is not claimed that it is absolutely incumbent on us to do so, but that in the exercise of a sound discretion we should do so. We think, as to all questions of fact presented on the hearing before Judge MARTIN, and passed on by him, this

practice should be followed; and, as the testimony **4. Res judicata— review, when.** here is precisely the same as that considered by him, we shall not enter into a close examination of the facts of the case. As upon the trial it will be necessary for the court to pass on the questions of law above discussed, we have thought it necessary to consider and dispose of them. We abstain from any discussion of the evidence presented bearing on the guilt or innocence of the petitioner. All the many hearings before examining magistrates and under writs of *habeas corpus* have been merely preliminary to determine whether the defendant should be put on trial. It is only necessary that the fact that a crime has been committed, coupled with probable cause for believing the defendant guilty of it, should be shown, in order to authorize holding him for trial.

We see no valid ground for his discharge, and he is therefore remanded to the custody of the sheriff of Reno county.

All the Justices concurring.