No. 88,867

STATE OF KANSAS, *Appellant*, v. JERROD L. LONG, *Appellee*.

(75 P.3d 1217)

Opinion filed September 12, 2003.

*Scott E. McPherson*, assistant district attorney, argued the cause, and *Christine Kenney*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*William K. Rork*, of Rork Law Office, of Topeka, argued the cause, and *John A. Fakhoury*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

GERNON, J.: The State appeals the trial court's dismissal of the charges against Jerrod L. Long due to the passage of the statute of limitations. We transferred the appeal to this court pursuant to K.S.A. 20-3018(c).

On July 25, 2001, the Douglas County District Attorney filed a complaint against Long, alleging that on August 28, 1999, he manufactured or attempted to manufacture methamphetamine, that he conspired to manufacture methamphetamine, and that he possessed both methamphetamine and drug paraphernalia. On July 27, 2001, a warrant was issued and delivered to the Douglas County sheriff. The warrant officer put the warrant in the Douglas County computer system on July 31, 2001. On August 1, 2001, the warrant officer was informed by the drug unit that Long's last known address in Shawnee County was invalid, so she did not forward the warrant to Shawnee County.

The warrant officer sought approval from the district attorney's office to input the warrant in the National Criminal Information Center (NCIC) computer. After receiving approval, she entered the warrant in the NCIC computer on September 25, 2001. The warrant was executed on October 10, 2001, when Long was arrested in Shawnee County for other reasons. Long had been in custody in Shawnee County from August 6, 2001, until August 8, 2001.

Long filed a motion to dismiss, claiming that the statute of limitations had expired before his prosecution began. Long attached an affidavit to his motion, stating that he had been in custody in Shawnee County from August 6 to 8, 2001, and claimed that if the warrant had been served at that time, it would have been within the statute of limitations.

Following a brief evidentiary hearing, the trial court granted Long's motion, ruling that Long could have and should have been served when he was arrested in August 2001, and that the sheriff's failure to serve him at that time constituted unreasonable delay. The State filed an appeal pursuant to K.S.A. 2002 Supp. 22-3602(b)(1).

The State argues that the trial court erred when it dismissed the charges against Long because the action had not been commenced before the statute of limitations had run.

The analysis of this issue requires the court to interpret a statute, which is a question of law subject to de novo review. *State v. Engles*, 270 Kan. 530, 532-33, 17 P.3d 355 (2001). Statutes of limitation

are to be liberally construed in favor of the accused and against the prosecution. *State v. Bentley*, 239 Kan. 334, 336, 721 P.2d 227 (1986).

Long is alleged to have committed the offenses on August 28, 1999. The State had 2 years to commence the prosecution of Long for his alleged offenses. K.S.A. 2002 Supp. 21-3106(8).

K.S.A. 2002 Supp. 21-3106(11) defines the commencement of a prosecution. It provides:

"A prosecution is commenced when a complaint or information is filed, or an indictment returned, and a warrant thereon is delivered to the sheriff or other officer for execution. No such prosecution shall be deemed to have been commenced if the warrant so issued is not executed without reasonable delay."

The State raises two arguments in support of its position. First, the State argues that the trial court erred when it found the service of the warrant to be unreasonably delayed because Long "could have been and should have been served with the warrant" while in the custody of Shawnee County from August 6-8, 2001. The State cites *State v. Nicholson*, 243 Kan. 747, 763 P.2d 616 (1988), in support of its argument.

The *Nicholson* case, however, is factually different. In *Nicholson*, the accused sought dismissal under the statute of limitations, claiming an unreasonable delay in executing the warrant because it had not been served for over 2 years. During that 2-year period, the accused was in the custody of the Kansas State Industrial Reformatory (KSIR). Although the State had not executed the warrant by arresting the accused, within 3 months of issuing the warrant, it notified KSIR of the existence of a warrant and requested that a detainer be placed on the accused if he was in custody there. Shortly after KSIR received the detainer request, it notified the accused of the detainer. Noting that the statutory definition for arrest is "the taking of a person into custody," the *Nicholson* court held that the State was not expected to execute the warrant by arresting the accused when he was already in custody. 243 Kan. at 749-50. The *Nicholson* court equated the detainer request with the execution of the warrant. See 243 Kan. at 748-51.

Relying on *Nicholson*, the State attempts to argue that it could not have "executed" the warrant while the accused was in custody

in Shawnee County because it could not arrest a person already in custody. This argument overlooks the fact that the Douglas County sheriff's office could have notified Shawnee County of the warrant and requested a detainer as did the sheriff in the *Nicholson* case. It also overlooks the fact that the accused was in custody in Shawnee County until August 8, 2001, and could easily have been arrested immediately upon his release if the Douglas County sheriff's office had notified Shawnee County of the warrant.

Nevertheless, the reasonableness of the delay in executing the warrant cannot be measured by what the State could have or should have done. The key to analyzing the reasonableness of the warrant execution is to look at what the State did, not what it did not do. See *Nicholson*, 243 Kan. at 748-51; *State v. Washington*, 12 Kan. App. 2d 634, 637, 752 P.2d 1084, *rev. denied* 243 Kan. 781 (1988). Accordingly, the State shifts its focus in its second argument, where it asserts that 42 days was not an unreasonable delay in executing the warrant.

Four Kansas cases analyze the reasonableness of the delay in executing a search warrant. See *Nicholson*, 243 Kan. at 749; *In re Clyne*, 52 Kan. 441, 35 Pac. 23 (1893); *State v. Dozal*, 31 Kan. App. 2d 344, 65 P.3d 217 (2003); and *Washington*, 12 Kan. App. 2d at 637.

In *Dozal*, the most recent case, the Court of Appeals held that an 84-day delay between the issuance of the warrant and its execution was unreasonable. 31 Kan. App. 2d at 344. In that case, the sheriff attempted to execute the warrant by mailing a letter to the accused via first class mail. The accused claimed that he never received the letter. Thereafter, the sheriff entered the warrant in the NCIC computer. The *Dozal* court's decision is based on the State's lack of effort to execute the warrant even though the accused was in the county at an address known by the sheriff during that period. The court stated that "[t]he sheriff's mailing of a letter to a defendant requesting that he or she drop by the sheriff's office to be arrested cannot be held to be a bona fide effort to serve a warrant." 31 Kan. App. 2d 344, Syl. ¶ 2.

The *Dozal* court relied on *Washington*, 12 Kan. App. 2d 634. There, the accused was arrested more than 30 months after the

warrant had been issued. The sheriff attempted to serve the warrant on four occasions during the first 2 months, but made no attempts thereafter. The warrant was ultimately served when the accused was arrested on different charges. The *Washington* court implied that the initial 2-month delay was reasonable because the sheriff made four attempts to serve the warrant during that time period. However, the court determined that the 28 months in which no attempt was made to serve the warrant constituted an unreasonable delay. Thus, the *Washington* court held that the 28 months would be included in computing the statute of limitations. 12 Kan. App. 2d at 637.

Both *Dozal* and *Washington* relied on *In re Clyne*, 52 Kan. 441, an old Kansas case. In *Clyne*, 5 months passed between the issuance and execution of the warrant. During that 5 months, the accused was in the county "where the sheriff could have taken him on almost any day." 52 Kan. at 446. The county attorney, however, had asked the sheriff to delay service until he could find more evidence against the accused. The *Clyne* court held that the delay was unreasonable, stating that "[n]either the county attorney nor the sheriff, nor both together, can, by any voluntary act, or by any neglect of official duty, extend the limit of the law." 52 Kan. App. 2d at 448. Without putting a name on the basis for the holding, the court seemed to focus on the lack of diligence as a basis for concluding the delay was unreasonable.

The final case to consider in analyzing the reasonableness of a delay is *Nicholson*. The *Nicholson* court noted that the sheriff issued a detainer to the KSIR less than 3 months after the warrant was issued. By making this observation, the *Nicholson* court implies that it considered the 3-month delay in issuing a detainer to be reasonable.

Although the State claims that there was only a 42-day delay, that period is calculated beginning with the last day within the statute of limitations, rather than the date the warrant was issued. The sheriff's office received the warrant on July 27, 2001. On August 1, 2001, the sheriff attempted to confirm Long's address in Topeka but was informed that the address was no longer valid. As a result, the sheriff's warrant officer did not forward the warrant

to Shawnee County. Without any further information regarding Long's whereabouts, the sheriff's warrant officer contacted the district attorney's office to get approval for entering the warrant on NCIC. On September 25, 2001, the warrant was entered on the NCIC computer. The warrant was actually executed on October 10, 2001, 75 days after it was issued. To properly compare this case with previous case law, 75 days, rather than 42 days, must be used.

The facts of this case are clearly distinguishable from *Clyne*, where the court's finding of unreasonable delay was based on the accused's repeated availability for service and the county attorney's bad faith request that the service be delayed until more evidence could be garnered. Here, the sheriff did not know where Long could be found and had not been instructed to delay service of the warrant. Accordingly, *Clyne* provides little guidance for evaluating the reasonableness of the delay in this case.

This case is distinguishable from the 28-month period of inaction in *Washington*. In *Washington*, the sheriff made four attempts to serve the warrant 2 months after the warrant was issued. In *Washington*, the sheriff actually went to the last known address on four occasions trying to serve the warrant or get more information regarding the accused's whereabouts. Here, there was no attempt to contact Long at his last known address and no actual attempt to serve the warrant. After the warrant officer was told by the secretary from the drug unit that the address was invalid, the record before us indicates that there was no attempt to verify that information. She merely input the warrant into a local computer system to notify other local law enforcement of the warrant. Although the *Washington* case turned on the 28 months of inactivity, the *Washington* court seemed satisfied with the sheriff's four attempts to serve the warrant. No such attempts are shown in this case. Thus, the *Washington* case supports a finding that the delay here was unreasonable.

The facts in this case are more analogous to the facts in *Dozal*. Although the time period here is shorter than the 84 days in *Dozal*, the sheriff's attempts at service are similar. Besides mailing a letter to the accused, the sheriff in *Dozal* made no other attempts other than inputting the warrant into the NCIC computer. In this case,

the warrant officer input the warrant into the NCIC computer but did not send a letter to Long or make any attempts to verify Long's address. The sheriff's attempts in this case are less than those that were disapproved by the *Dozal* court. Thus, when compared with *Dozal*, the facts in this case permit a conclusion that the delay was unreasonable.

Cases from other jurisdictions are of limited value. Several cases from Florida with a very similar issue reveal that the appellate courts there look to see what attempts have been made to locate the individual sought and use a "diligence" test. See *Sutton v. State*, 784 So. 2d 1239, 1242 (Fla. Dist. App. 2001); *Newman v. State*, 707 So. 2d 811, 812 (Fla. Dist. App. 1998); *Coleman v. State*, 655 So. 2d 1239 (Fla. Dist. App. 1995).

Oregon, on the other hand, takes the view that entering information in the computer system on a timely basis is sufficient. See *State v. Chinn*, 115 Or. App. 662, 665-66, 840 P.2d 92 (1992); *State v. Pirouzkar*, 98 Or. App. 741, 744, 780 P.2d 802 (1989).

The trial court, in its ruling, was concerned about "a lapse of over two years, one month and fifteen days from the date of the alleged offensive conduct . . . to the date the Warrant was served, October 12, 2001." We have no such concern. The decision to charge and when to charge is within the prosecutor's discretion. The charge need only be filed within the statutorily allowed parameters. Here, the charge was filed within the statute of limitations, and the question became whether the warrant was served in a timely manner.

These cases do not lend themselves to bright lines and rigid formulas. Rather, each case must be considered given the totality of the events involved and what efforts were made to execute any warrant. If the warrant was not timely served, then the courts are required to ask why. The diligence of those charged with the responsibility of bringing charges and serving warrants will obviously weigh on any court considering whether any delay was or was not reasonable.

The State is required to explain why the delay was reasonable, regardless of the length of the delay. See K.S.A. 2002 Supp. 21-3106. In this case, the State did not create a record to justify the

delay. There is no testimony to establish the validity of the drug task force secretary's statement about Long's address. There is no explanation of why that statement resulted in the State proceeding as it did. Sheriff's department policies and justifications were not admitted into evidence to explain why the information from the drug task force secretary prevented the sheriff's department from forwarding the warrant to Shawnee County. Likewise, there was no explanation of or justification for the protocol and practices between counties or between the sheriff's department and the prosecuting attorney. If the State had offered evidence in explanation of all or some of these points, we might have been able to determine that the delay in this case was reasonable.

Given the record before us and the case law requirement that statutes of this nature are to be liberally construed in favor of the accused and against the prosecution, we conclude that we are required to affirm the trial court.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.