******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KELLER, J., with whom MULLINS and KAHN, Js., join, dissenting. I respectfully disagree with the majority's[1] conclusion that the Appellate Court erred in holding that the trial court correctly determined that the state had executed the arrest warrant for the defendant, Terry Freeman, without unreasonable delay and, therefore, properly denied the defendant's motion to dismiss the criminal charges against him in connection with a 2013 armed robbery. In determining that the delay was unreasonable, the majority effectively concludes that the state must not only obtain the arrest warrant but also execute the warrant before the statute of limitations has expired or offer evidence as to why it was not possible to have done so. Such a standard clearly exceeds what is required under our case law.[2]

Twenty-three days before the statute of limitations expired on charges relating to the 2013 armed robbery, the defendant provided a police detective with a confession to his participation in that cold case. The detective timely prepared an arrest warrant, and, by the time the judge signed the warrant, the statute of limitations was due to expire in fourteen days. The following activities ensued in those fourteen days: a police officer obtained the signed warrant and submitted a request for an application for a writ of habeas corpus to transport the defendant to court for service of the warrant, the Office of the State's Attorney prepared the application for the writ, and the writ was signed by that office and by the clerk of the court. Thus, before the statute of limitations expired, the state had undertaken all of the necessary preparatory steps for execution of the warrant under the unusual circumstances of the case.

The majority concludes that these efforts were inadequate on their face to comply with the dictates of *State* v. *Swebilius*, 325 Conn. 793, 159 A.3d 1099 (2017); consequently, the state was required to provide evidence to explain why it failed to do more. In particular, the majority deems fatal the state's failure to provide evidence to explain why the defendant could not have been transported to the court for service of the warrant before the statute of limitations expired. The standard applied by the majority misapprehends the burden that this court imposed on the state in *Swebilius*.

To understand this court's intention in that case, it is important to focus on the specific context in which this issue came before the court. It had long been established that, in Connecticut, "the issuance of an arrest warrant is sufficient 'prosecution' to satisfy the statute of limitations only if the warrant is executed with due diligence." *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995). The court in *Swebilius* addressed the question of whether the state can be deemed to have acted

with due diligence, as a matter of law, when *no* effort was made to execute the warrant during the limitation period, if the warrant was executed within a sufficiently brief period after the limitation period expired. *State v. Swebilius*, supra, 325 Conn. 798–800. In *Swebilius*, the arrest warrant was executed thirteen days after the limitation period expired when the defendant voluntarily surrendered to the police after learning that the warrant had been issued. Id., 797. This court rejected the notion that any brief period of delay could be presumed reasonable as a matter of law. Id., 801.

Before articulating the state's burden, this court noted its "agree[ment] with the drafters of . . . the Model Penal Code that [i]t is undesirable . . . to toll the statute of limitations in instances [in which] the warrant is issued but *no* effort is made to arrest a defendant whose whereabouts are known."[3] (Emphasis added; footnote omitted; internal quotation marks omitted.) Id., 814. To strike the proper balance of a rule that would discourage such inaction without imposing an "undue burden" on the state; id., 814; this court articulated the following standard: "[I]f the defendant can demonstrate his availability during the statutory period, the state must make *some* effort to serve the arrest warrant before the relevant statute of limitations expires, or to offer some evidence explaining why its failure to do so was reasonable under the circumstances." (Emphasis added.) Id. "Some" effort, then, was in contraposition to "no" effort. See id., 808 ("such officials must present some credible and persuasive factual basis for *inaction* when they fail to observe the statute of limitations" (emphasis added)). The court emphasized the modest nature of the burden in other ways. It noted that, "in cases involving relatively brief delays, evidence of a legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate [that the warrant was executed without unreasonable delay]." Id., 814; see also id., 814 n.17. This example further signaled that the state was not required to go to extraordinary lengths or to upend other important obligations to demonstrate due diligence.

Instead of considering whether the state made "some effort" to execute the warrant, a burden that the state plainly satisfied, the majority seizes on the court's subsequent reference in *Swebilius* to "reasonable efforts . . . ." Id., 815. It then ascribes a meaning to that term that effectively equates to "best efforts" (i.e., "*every* reasonable effort"), which far exceeds "some effort." Insofar as the majority concludes that the state was required to explain why it could not have executed the warrant within the limitation period, it appears to require the state to present additional evidence to explain why it did not do everything *possible* to accomplish that end, a far cry from "some effort."[4] As the Kansas Court of Appeals explained in a case favorably

cited by this court in *State* v. *Swebilius*, supra, 811 n.13, "[w]hen determining the reasonableness of a delay in the execution of an arrest warrant, it is key to look at what the [s]tate did do, *not what it did not do*." (Emphasis added.) *State* v. *Divers*, Docket No. 106,312, 2012 WL 4794603, *3 (Kan. App. October 5, 2012) (decision without published opinion, 286 P.3d 239), review denied, Kansas Supreme Court, Docket No. 11-106312-A (June 14, 2013); see *State* v. *Long*, 276 Kan. 297, 300, 75 P.3d 1217 (2003) ("the reasonableness of the delay in executing the warrant cannot be measured by what the [s]tate could have or should have done"); see also *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004) (stating, in context of case involving constitutional rights, that "[r]easonable efforts means doing everything reasonable, not everything possible" (internal quotation marks omitted)).

Only four sentences stand between the court's references in *Swebilius* to "some effort" and "reasonable efforts . . . ." *State* v. *Swebilius*, supra, 325 Conn. 814–15. This proximity clearly indicates that the court viewed these standards to be functionally equivalent.[5] Those terms can easily be reconciled if "reasonable" was simply intended to make clear that "some" effort is not satisfied by any effort no matter how inconsequential or ineffective to accomplish the intended goal. See id., 811 n.13 (favorably citing approach in *State* v. *Gauthier*, Superior Court, judicial district of New Haven, Docket No. N23N-MV-11-0074499-S (September 11, 2012), in which delay of "forty-nine days after statute of limitations expired was not unreasonable because officers 'maintained diligent attention to [the] case' and attempted to serve warrant as soon as officer was aware it had been signed," despite one month lapse between efforts to see whether warrant had been signed). To the extent that the majority implies that the standard as I have interpreted it would be satisfied by efforts amounting to "nonchalance" or less, it is clearly mistaken.

Another problem with the majority's analysis is that it appears to require the state to provide an explanation whenever it fails to execute the warrant within the limitation period. For example, it would not be good enough for the state to establish that it attempted to execute the warrant where the defendant was believed to reside; it would be required to explain why service could not be effectuated at that time and why further efforts could not have been made to successfully execute the warrant within the limitation period. The court in *Swebilius* only required the state to provide an explanation when it failed to make "some" (i.e., "reasonable") effort within the limitation period. *State* v. *Swebilius*, supra, 325 Conn. 814.

When assessed against that standard, it is clear that the state made reasonable efforts to execute the war-

rant before the statute of limitations expired. As I previously noted, the state undertook all of the necessary preparatory steps for execution of the warrant before the limitation period expired.

The only question that remains is whether execution of the warrant seven days after the statute of limitations expired (five days if one does not count weekend days, when the court was not open) was "without unreasonable delay."[6] *State* v. *Crawford*, 202 Conn. 443, 451, 521 A.2d 1034 (1987). The majority overlooks the significance of the fact that the present case is atypical. In the usual case, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him." Id., 450. In the present case, the defendant was in the custody and control of the Commissioner of Correction when the arrest warrant was issued. The defendant was a convicted felon with four years of his sentence remaining. Even without taking the prosecutor's explanation into account,[7] the evidence submitted reflects that the procedures undertaken to execute the warrant required the cooperation of the Department of Correction, judicial marshals, and a court liaison officer for the New Haven Police Department. In light of the need for coordination among various agencies to temporarily transfer custody of the defendant from prison to the court and to execute the warrant in a manner consistent with procedures to maintain control over the defendant and to protect public safety, I would conclude that execution of the warrant five (or seven) days after the limitation period expired under such circumstances was without unreasonable delay.[8]

The majority perceives unjustifiable nonchalance on the part of the state; I see sufficient evidence of due diligence in the brief period of time between the date the warrant was issued and the date it was executed.

Accordingly, I respectfully dissent.

[1] In the interest of simplicity, I refer to the opinion announcing the judgment as the majority opinion.

[2] I agree with the majority that de novo review is appropriate because we are considering stipulated facts on a cold record. See *Jones* v. *State*, 328 Conn. 84, 101, 177 A.3d 534 (2018) ("Ordinarily, when the facts are undisputed, determining the legal import of those facts presents a question of law subject to de novo review. . . . This is so even in the context of fact laden disputes ordinarily subject to a trial court's discretion." (Citations omitted.)).

[3] Much of the court's analysis in *Swebilius* rested on *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), a case in which there similarly was no evidence that the state had made *any* effort to execute the arrest warrant before the limitation period expired. See *State* v. *Swebilius*, supra, 325 Conn. 801–802 (noting that, in *Crawford*, "this court was asked to determine whether the mere issuance of an arrest warrant within the limitation period was sufficient to commence a prosecution for purposes of [General Statutes] § 54-193, thereby tolling the limitation period").

[4] The majority denies that it is effectively requiring the state to do everything possible to serve the warrant within the limitation period. Although

the majority's determination that the state is required to provide evidence to explain why it did not execute the warrant within the limitation period leaves the door open for some explanation short of impossibility to suffice, the state cannot have confidence that any effort short of everything that is possible will be deemed "reasonable" under the majority's view.

[5] The court in *Swebilius* used "some effort" when articulating the general standard; *State* v. *Swebilius*, supra, 325 Conn. 814; and "reasonable efforts" when referring to the state's burden on remand. Id., 815.

[6] Whether the delay is unreasonable is assessed in relation to the period between the issuance of the arrest warrant and its execution. See *State* v. *Swebilius*, supra, 325 Conn. 809 ("the state must . . . demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant") Thus, for example, if the state had made some effort to serve the warrant long before the statute of limitations expired and then did nothing else of consequence before that period expired, we would consider the entire period between issuance and execution, including that period of inaction, in assessing whether the delay in execution was unreasonable. In the present case, I focus on the delay following the expiration of the statute of limitations because I conclude that the state made sufficient efforts to execute the warrant during the limitation period.

[7] In addition to noting that the Thanksgiving holiday and weekend days fell in the period between the issuance of the warrant and the date on which the defendant was transferred to the court to allow for execution of the warrant, the prosecutor explained: "So, it was reasonable because there are a number of factors that play in effectuating the transport of an inmate to this court here in Milford. It is not as simple as having the West Haven Police Department take a ride up to Carl Robinson [Correctional Institution] and serve the warrant because, of course, then, if that warrant is served, [the defendant] would have to be transported here to court the next day for his arraignment before the court. So, it's not as logistically simple as just taking a ride up there and serving the warrant.

"As Your Honor is aware, there are certain limitations on the staff of this court with respect to how many inmates will be housed downstairs on any particular day. I know that our office and our administrative staff in making requests for writs of habeas corpus are mindful of dates in which . . . [we are] already at capacity as far as prisoner transport. It also requires the involvement of other agencies, notably the judicial marshals, to transport inmates from . . . correctional facilities . . . and, frankly, I think [as] a matter of course and a matter of courtesy, we . . . haven't made a habit of requesting transport a day later, two days later or a week later. I think typically it's a date that kind of works with the calendar that has been set out as far as how many inmates are being transported to court on a given day, and then giving a little bit of lead time for the relevant agencies to . . . plan the transport of the inmate to court. . . .

"[A]s to whether it was reasonable that it was done on December 6, roughly two weeks after, maybe three weeks after the warrant had been signed, and about two weeks after the habeas [writ] was requested, you know, I think that's consistent with our office's practice and consistent . . . with our course of action, which is to [be] mindful that there are other people involved in the system who have to act when we issue a writ of habeas corpus, and giving the two week lead time is reasonable to allow all of those various factors the time to make preparations."

I note that this contextual explanation of the myriad specific considerations that were factors in the present case is a far cry from the type of generic excuse that this court deemed inadequate in *Swebilius*. See *State* v. *Swebilius*, supra, 325 Conn. 814–15 n.17 (noting that properly contextualized statistics demonstrating competing demands on police department could provide evidence of reasonableness of delay, whereas "[t]he mere fact that a police department is a very busy urban police department is not enough for it to avoid its obligation to serve the warrants in a timely manner" (internal quotation marks omitted)). Contrary to the majority, I see nothing inherently unreasonable about a prosecutor's adhering to procedures put into place to accommodate coordination among the various agencies involved in the transportation of an inmate, such that further explanation is required under the present circumstances.

[8] In light of my conclusion that the state's efforts within the limitation period were reasonable, I need not consider the majority's determination that "admissible evidence" was required to explain the purported inadequacy of those efforts and, thus, that the trial court could not consider the prosecutor's representations to the trial court, which were made in response to the

court's direct questions. This court has permitted trial courts to rely on such representations with respect to matters of similar import when there is no objection to the veracity or accuracy of the statements, no request for an evidentiary hearing on the matter, and no statute or court rule requiring such an evidentiary hearing. See, e.g., *Maio* v. *New Haven*, 326 Conn. 708, 729, 167 A.3d 338 (2017); *In re Natalie S.*, 325 Conn. 849, 857–58, 163 A.3d 1189 (2017); *State* v. *Lopez*, 239 Conn. 56, 79, 681 A.2d 950 (1996); *State* v. *Haye*, 214 Conn. 476, 482–83, 572 A.2d 974 (1990). Even if, however, the majority were correct that "admissible evidence" is required and that a prosecutor's statements to the trial court are not admissible evidence, under well settled principles, the defendant's failure to object when the court solicited explanations from the prosecutor would constitute a waiver of any nonconstitutional claim that the statements were inadmissible evidence. See, e.g., *Pereira* v. *State Board of Education*, 304 Conn. 1, 46 n.33, 37 A.3d 625 (2012) ("[i]t is well established that [during trial] a party that fails to object timely to the introduction of evidence . . . is deemed to have waived such objection . . . and may not subsequently resurrect it" (internal quotation marks omitted)); *State* v. *Brown*, 279 Conn. 493, 503, 903 A.2d 169 (2006) ("any infirmity in the evidence . . . is deemed to be waived if not seasonably raised" (internal quotation marks omitted)).

Moreover, as I do not believe that the state had clear notice either that it was required to explain its failure to do more or that its representations to the trial court would not be accepted by reviewing courts, I do not agree with the majority's determination that a remand would not be warranted.