(244 P.3d 279)
Nos. 104,025
104,026

In the Matter of P.R.G.; In the Matter of J.C.T.

Opinion filed December 10, 2010.

*Karen R. Palmer*, of Kansas Legal Services, of Wichita, for appellants.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

KNUDSON, J.: This joint appeal by the respondents, P.R.G. and J.C.T., challenges their juvenile convictions under the Revised Kansas Juvenile Justice Code (KJJC). The respondents contend that the district court erred in its determination that their prosecutions were commenced within the applicable 2-year statute of limitations.

## P.R.G.'S Underlying Circumstances

On September 13, 2006, the State filed a complaint alleging that P.R.G., a minor, consumed alcohol in violation of K.S.A. 41-727(a). The complaint does not state the month and day of P.R.G.'s birth but does state he was born in 1991. The State claimed P.R.G.'s consumption of alcohol occurred on July 24, 2006.

The State unsuccessfully attempted to serve P.R.G. at 119 North Main, Viola, Kansas, 67149, when in fact he lived at 119 South Main. An arrest warrant was issued on October 4, 2006, for P.R.G. after his failure to appear in court.

P.R.G. was subsequently arrested under the warrant more than 3 years after it was issued. P.R.G.'s motion to dismiss the underlying complaint on the ground it was barred by the statute of limitations was denied by the district court. P.R.G. was found guilty of violating K.S.A. 41-727(a) after a bench trial on stipulated facts. He was ordered to serve nonreporting probation for 90 days, assessed a fine and costs, and also ordered to undergo substance abuse counseling as a result of his juvenile conviction. P.R.G. has filed a timely appeal.

## J.C.T.'S Underlying Circumstances

The State filed a complaint alleging that on October 8, 2007, J.C.T. committed battery in violation of K.S.A. 21-3412(a)(2). The complaint was filed on June 11, 2008. The complaint does not state the month and day of J.C.T.'s birth, only that he was born in 1990.

The State attempted to serve J.C.T. at his residence by attaching a copy of the complaint to his door and mailing a copy to his known address. While the address on the summons was J.C.T.'s correct address, no member of J.C.T.'s household was aware of his pending criminal charge. When J.C.T. failed to appear under the complaint, a warrant was issued for his arrest on August 6, 2008.

J.C.T. was arrested on October 13, 2009, when he was 18 or 19 years old. J.C.T.'s motion to dismiss the underlying complaint on the ground it was barred by the statute of limitations was denied by the district court. After a bench trial on stipulated facts, J.C.T. was found guilty and ordered to pay fines and court costs. J.C.T. has filed a timely notice of appeal.

## DISCUSSION

The respondents argued unsuccessfully to the district court that in order for the filing of a complaint and issuance of process to toll the running of the statute of limitations, process must be executed without unreasonable delay. They argued further that the delay between issuance of process and actual service was unreasonable and as a consequence the 2-year statute of limitations was not tolled.

In denying the motion of respondents to dismiss, the district court acknowledged that K.S.A. 21-3106(7) of the Kansas Criminal Code does specifically state: "No such prosecution shall be deemed to have been commenced if the warrant so issued is not executed without unreasonable delay," but concluded there was no comparable statute in the KJJC that would provide protection to a juvenile if there was unreasonable delay in execution of process. The district court also relied on the reasoning in *State v. Edwards*, No. 88,936, an unpublished opinion filed February 13, 2004. In *Edwards* the defendant argued that his juvenile prosecution was unnecessarily delayed because of the failure to serve his arrest warrant for nearly 2 years. The Court of Appeals concluded the issue had not been raised below and was waived. However, in *obiter dictum* the appeals panel stated the argument lacked merit because then K.S.A. 21-3106(5) (now K.S.A. 21-3106[7]) only applied to adult criminal prosecutions and there was no comparable statute in the juvenile code. *Edwards*, slip op. at 13-14.

· On appeal, the respondents acknowledge the KJJC has no statutory provision with language comparable to K.S.A. 21-3106(7), but argue the concept of unreasonable delay is derived from the common law of Kansas and is applicable in all prosecutions, including prosecutions under the juvenile code.

In *In re Clyne*, 52 Kan. 441, 35 Pac. 23 (1893), the Kansas Supreme Court engaged in a detailed discussion of the common law:

"It is contended by counsel for the petitioner, first, that the prosecution under which he is now held is barred by the statute of limitations; that notwithstanding the fact that the warrant was issued within two years after the commission of the offense, it was not followed up with service, or an attempt at service, as the law directs. The statute requires criminal prosecutions of this kind to be commenced

within two years after the commission of the offense. It also provides, that if the person committing the offense conceals the fact of the crime, the time of concealment is not to be included in the period of limitation. The legislature has nowhere provided what shall be deemed a commencement of a criminal prosecution. It was held in *In re Griffith*, [35 Kan. 377, 11 Pac. 174 (1886)], that the mere filing of a complaint before a magistrate, charging the party with the commission of the offense, was not such a commencement of the prosecution as to prevent the running of the statute. It was intimated in that case that the filing of the complaint, and the issuing of a warrant thereon in good faith, and the delivery to an officer to execute, was a sufficient commencement of the action to prevent the bar of the statute; but in this case we have the further question to consider, whether the defendant can, after the lapse of nearly five months, be taken into custody and prosecuted, after the filing of the complaint and issuing a warrant thereon, with a direction on the part of the county attorney—who represents the state—to the sheriff not to make present service, and where it appears that the defendant is in the county, and frequently seen by the sheriff, who had frequent opportunities to make the arrest, yet made no attempt to do so. The command of the warrant, if in the form prescribed by statute, is, that the sheriff shall forthwith arrest the defendant. May he then, at the instance of the prosecuting attorney, disobey the command of his writ, until such time as the prosecutor may feel prepared to proceed with the examination, and then make the service? Can the sheriff, merely by neglecting to promptly perform the duty enjoined upon him by law, extend the period of limitation prescribed by the legislature? and, if so, where is the limit of his authority? We have examined the cases cited by counsel for the state, and, while we find language in some of them which seems to be broad enough to cover this case, they yet are hardly in point. We certainly are not satisfied with any such construction of the law. *We think the better rule is, that the complaint must be filed and the warrant issued within the period limited by the statute; that it must be issued in good faith, and with the intention that it be presently served, and that the officer must proceed to execute it according to its command; that he must make the arrest within a reasonable time and at the first reasonable opportunity offered him. Neither the county attorney nor the sheriff, nor both together, can, by any voluntary act or by any neglect of official duty, extend the limit of the law.* This is the logic of the opinion in *In re Griffith*, above cited, and is sustained by the weight of authority. (*Ross v. Luther*, 4 Cow. 158; *Clark v. Slayton*, 1 Atl. Rep. 113; *People v. Clement*, 72 Mich. 116; *Burdick v. Green*, 18 Johns. 13; *Mason v. Cheney*, 47 N. H. 244.)" (Emphasis added.) 52 Kan. at 446-48.

Subsequent case law embraces the common-law rule of *In re Clyne* and the impact of unreasonable delay in the execution of arrest warrants. See *State v. Bowman*, 106 Kan. 430, 188 Pac. 242

(1920); *State v. Waterman*, 75 Kan. 253, 88 Pac. 1074 (1907); and *In re Broadhead*, 74 Kan. 401, 86 Pac. 458 (1906).

Ultimately, the holding in *In re Clyne* was embodied in K.S.A. 21-3606(7) when the 1969 Kansas Crimes Code was enacted. K.S.A. 21-3101 *et seq*. However, as we previously noted, the juvenile justice code enacted in 2006 has no comparable statute. Thus, we approach the heart of the issue before us: Does the judicial rule of *In re Clyne* have efficacy regarding prosecutions under the KJJC notwithstanding the lack of a specific provision within the code?

K.S.A. 2009 Supp. 38-2301 provides "[t]he primary goals of the juvenile justice code are to promote public safety, hold juvenile offenders accountable for their behavior and improve their ability to live more productively and responsibly in the community." These goals embrace concepts of punishment, deterrence, and rehabilitation, much as we find in our adult criminal proceedings.

As a consequence our Supreme Court in *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008), stated:

"In addition to being more aligned with the purpose of the criminal sentencing statutes, the KJJC also incorporates language similar to that found in the Kansas Criminal Code, see K.S.A. 21-3101 *et seq.*, and the Kansas Code of Criminal Procedure, see K.S.A. 22-2101 *et seq.* Under the [Kansas Juvenile Offender Code] KJOC, juveniles were required to admit or deny the allegations against them or plead nolo contendere. K.S.A. 1982 Supp. 38-1633(b). Under the KJJC, a juvenile is required to plead guilty, not guilty, or nolo contendere like adults charged with a crime. See K.S.A. 2006 Supp. 22-3208; K.S.A. 38-2344(b). Although both the KJOC and the KJJC refer to an adjudication rather than a conviction, a 'dispositional proceeding' under the KJOC is now referred to as a 'sentencing proceeding' in the KJJC. See K.S.A. 1982 Supp. 38-1605; K.S.A. 2006 Supp. 38-2305(c). The 'State youth center' referred to in the KJOC, K.S.A. 1982 Supp. 38-1602(g), is now called a 'juvenile correctional facility,' K.S.A. 2006 Supp. 38-2302(j), which is more akin to an adult 'correctional institution,' K.S.A. 21-4602(e). Moreover, the KJJC emulates the language of the Kansas Criminal Code when it refers to the term of commitment to a juvenile correctional facility as a 'term of incarceration.' K.S.A. 21-4603d; K.S.A. 21-4608; K.S.A. 2006 Supp. 38-2374; K.S.A. 2006 Supp. 38-2376. This conceptualization of juvenile offenders stresses the similarities between child and adult offenders far more than it does their differences.

"The legislature also emulated the structure of the Kansas Sentencing Guidelines when it established a sentencing matrix for juveniles based on the level of the offense committed and, in some cases, the juvenile's history of juvenile ad-

judications. See K.S.A. 21-4701 *et seq.*; K.S.A. 2006 Supp. 38-2369. For example, a juvenile offender found guilty of committing an off-grid felony may be sentenced to 'a juvenile correctional facility for a minimum term of 60 months and up to a maximum term of the offender reaching the age of 22 years, six months.' K.S.A. 2006 Supp. 38-2369(a)(1). A juvenile offender found guilty of committing a level 7, 8, 9, or 10 person felony with one prior felony adjudication may be sentenced to 'a juvenile correctional facility for a minimum term of nine months and up to a maximum term of 18 months.' K.S.A. 2006 Supp. 2369(a)(2)(B).

"Like the adult sentencing guidelines, the KJJC allows the sentencing judge to depart from the juvenile placement matrix upon a motion by the State or the sentencing judge. K.S.A. 21-4718; K.S.A. 2006 Supp. 38-2371. The KJJC sentencing judge may consider the aggravating factors from K.S.A. 21-4716(c)(2) or K.S.A. 21-4717(a). K.S.A. 2006 Supp. 38-2371(a)(3). If the sentencing judge departs from the presumptive sentence, he or she must state on the record the substantial and compelling reasons for the departure just as if he or she were sentencing an adult offender. See K.S.A. 21-4716(a); K.S.A. 2006 Supp. 38-2371(d). Although any juvenile sentence within the presumptive sentencing range is not subject to appeal, juvenile departure sentences, like adult departure sentences, may be appealed. K.S.A. 2006 Supp. 38-2380(b)(2)(A); (b)(3); (b)(4).

"The KJJC is also similar to the adult sentencing guidelines in imposing a term of after-care on any juvenile sentenced in accordance with the juvenile placement matrix. See K.S.A. 21-4703(p); K.S.A. 21-4704(e)(2); K.S.A. 2006 Supp. 38-2369. Another similarity between the KJJC and the adult sentencing guidelines is the juvenile offender's opportunity to earn good time credits to reduce his or her term of incarceration. K.S.A. 21-4722; K.S.A. 2006 Supp. 38-2370.

"In addition to reflecting the provisions of the sentencing guidelines, the KJJC also establishes sentencing options that are similar to those available for adult offenders. Both adults and juveniles may be sentenced to probation; a community-based program; house arrest; a short-term behavior-modification program like a sanctions house or conservation camp; placement in an out-of-home facility; or incarceration in a correctional facility. K.S.A. 2006 Supp. 38-2302; K.S.A. 2006 Supp. 38-2361(a)(1), (2), (9), (10), (11), (12); K.S.A. 21-4603d(a)(1), (3), (4), (5), (6); K.S.A. 21-4610(c)(9). The district court also has authority to order both adults and juveniles to attend counseling; drug and alcohol evaluations; mediation; or educational programs. K.S.A. 2006 Supp. 38-2361(a)(4); K.S.A. 21-4603d(a)(7), (c); K.S.A. 21-4610(c)(9). In addition, the district court may require both adults and juveniles to perform charitable or community service; pay restitution; or pay a fine. K.S.A. 2006 Supp. 38-2361(a)(6), (7), (8); K.S.A. 21-4603d(a)(2), (b); K.S.A. 21-4610(c)(10). Sentencing of juveniles has become much more congruent with the adult model." 286 Kan. at 466-69.

The *In re L.M.* court concluded:

"These changes to the juvenile justice system have eroded the benevolent parens patriae character that distinguished it from the adult criminal system. The

United States Supreme Court relied on the juvenile justice system's characteristics of fairness, concern, sympathy, and paternal attention in concluding that juveniles were not entitled to a jury trial. *McKeiver* [*v. Pennsylvania*, 403 U.S. 528, 550, 91 S. Ct. 1976, 29 L. Ed. 2d 647, (1971)]. Likewise, this court relied on that parens patriae character in reaching its decision in *Findlay* [*v. State*, 235 Kan. 462, 681 P.2d 20 (1984)]. However, because the juvenile justice system is now patterned after the adult criminal system, we conclude that the changes have superseded the *McKeiver* and *Findlay* Courts' reasoning and those decisions are no longer binding precedent for us to follow. Based on our conclusion that the Kansas juvenile justice system has become more akin to an adult criminal prosecution, we hold that juveniles have a constitutional right to a jury trial under the Sixth and Fourteenth Amendments. As a result, K.S.A. 2006 Supp. 38-2344(d), which provides that a juvenile who pleads not guilty is entitled to a 'trial to the court,' and K.S.A. 2006 Supp. 38-2357, which gives the district court discretion in determining whether a juvenile should be granted a jury trial, are unconstitutional." 286 Kan. at 469-70.

In *In re D.E.R.*, 290 Kan. 306, 225 P.3d 1187 (2010), the Supreme Court considered whether a juvenile charged with an offense that would constitute a felony under the crimes code should have the right to a preliminary hearing. Justice Johnson, after concluding there was no statutory basis for requiring a preliminary hearing in a juvenile proceeding, turned to the issue of constitutional requirements and stated:

"Apparently, some have interpreted *In re L.M.* to mean that, because a juvenile proceeding is akin to a criminal prosecution for purposes of the right to a jury trial, juvenile proceedings must also utilize all of the same statutory procedures as a criminal prosecution. Such an interpretation reads too much into *In re L.M.* That decision was founded upon a juvenile's entitlement to a constitutional right. At most, *In re L.M.*'s equating of juvenile proceedings and criminal prosecutions would support the proposition that juveniles are entitled to all of the constitutional rights which adult criminal defendants possess, not that juvenile proceedings must look exactly the same as a criminal prosecution." 290 Kan. at 311.

Justice Johnson noted that an adult's right to a preliminary hearing is simply a statutory right; a right neither mandated by general constitutional privileges nor implicating due process concerns, and concluded:

"Without the need to accommodate constitutional concerns, this court is without the authority to declare that a juvenile is entitled to a K.S.A. 22-2902 preliminary examination, when neither that statute nor the Juvenile Code provides for such a procedure. It would be the legislature's place to create a mechanism for

juvenile preliminary examinations. Accordingly, we find that the district court erred in holding that D.E.R. was entitled to a K.S.A. 22-2902 preliminary examination, and our answer to the question reserved, as it relates to that ruling, is no." 290 Kan. at 313.

In summary, *In re L.M.* and *In re D.E.R.* together tell us: (1) The KJJC is patterned after the adult criminal code, including the designation of proceedings as prosecutions; and (2) juveniles may be entitled to constitutional protections that are extended to adult offenders, but generally not statutory rules of procedure unless specifically provided for in the KJJC.

We note the language of K.S.A. 2009 Supp. 38-2303(f) and K.S.A. 21-3106(5) is identical in substance. However, there is no corollary subsection in K.S.A. 2009 Supp. 38-2303 to that contained in K.S.A. 21-3106(7) concerning the effect of unreasonable delay in the execution of an arrest warrant. The general rule is that when a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009). Our Kansas Supreme Court has also held:

"A court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct." *State v. Urban*, 291 Kan. 214, Syl. ¶ 1, 239 P.3d 837 (2010).

Under a plain reading of K.S.A. 2009 Supp. 38-2303 it would appear there is no room for applying rules of construction to ascertain legislative intent. However, while fully embracing what was said in *In re D.E.R.*, we find the issue before us to be more nuanced because of the law enunciated in *In re Clyne.*

The respondents argue that there is no evidence whatsoever to indicate that the legislature intended by its silence in the KJCC to abrogate the common-law rule adopted by the Supreme Court almost a century earlier, or that the legislature viewed the policies underlying the statutes of limitations as different for juveniles than for adults.

K.S.A. 77-109 provides:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object."

As observed in *In re Estate of Mettee*, 10 Kan. App. 2d 184, 694 P.2d 1325, *aff'd* 237 Kan. 652, 702 P.2d 1381 (1985), when the legislature has intended to abolish a common-law rule, it has done so in an explicit manner. In the absence of such an expression of legislative intent, the common law remains part of our law. See *In re Frye*, 173 Kan. 392, 246 P.2d 313 (1952).

We hold the legislature has not abolished the common-law rule given in *In re Clyne* and subsequently embraced in other reported cases. See *State v. Dozal*, 31 Kan. App. 2d 344, 65 P.3d 217 (2003); and *State v. Washington*, 12 Kan. App. 2d 634, 752 P.2d 1084, *rev. denied* 243 Kan. 781 (1988). The difficult question is whether the rule should be made applicable to proceedings under the KJJC. We conclude that it should for the following reasons.

K.S.A. 2009 Supp. 38-2302(s) defines "warrant" as "a written order by a judge of the court directed to any law enforcement officer commanding the officer to take into custody the juvenile named or described therein."

K.S.A. 22-2202(20) defines "warrant" as "a written order made by a magistrate directed to any law enforcement officer commanding the officer to arrest the person named or described in the warrant."

In *In re Griffith*, 35 Kan. 377, 11 Pac. 174 (1886), the Supreme Court provided foundation for the common-law rule fashioned in *In re Clyne* where the mere filing of a criminal complaint without issuance of a warrant was considered. In concluding that the filing of the complaint was insufficient to toll the running of the statute of limitations, the court stated:

"The policy of the law is, that the accused shall have a prompt and speedy public trial before the proofs of his guilt or innocence have been obliterated. This purpose would not be accomplished by holding that the filing of a complaint alone

operated as a bar to the statute [of limitations], because complaints might be lodged before magistrates upon which no warrants would issue or arrests be made, and of which the public, as well as the accused, would have no knowledge until such time as interested persons might cause warrants to be issued and arrests to be made. *If this were permitted, prosecutions for supposed offenses could thus be kept alive and delayed indefinitely, and the accused, who at first was prepared with the proofs of his innocence, might, after the period of limitation fixed by the law, be lulled into a sense of security, and fail to preserve such proofs; and when a warrant is issued long after the statutory limitation, as was done in this case, he might, by reason of the delay, be entirely unprepared to meet the charge.*" (Emphasis added.) 35 Kan. at 380.

The common-law rule fashioned in *In re Griffith* recognizes the basic right of an accused in a free society to be charged and brought before the bar of justice in a timely manner without unreasonable delay. That basic right would be diminished when a warrant is issued but not executed without unreasonable delay. Thus, in *In re Clyne* the court implicitly recognizes an arrest warrant is a judicial order that requires service within a reasonable time when it stated "[n]either the county attorney nor the sheriff, nor both together, can, by any voluntary act or by any neglect of official duty, extend the limit of the law." *In re Clyne*, 52 Kan. at 448.

We conclude the common-law rule given to us in *In re Clyne* should be applicable in proceedings under the KJJC. The common-law rule is neither fish nor fowl to be fit neatly within the holdings in *In re L.M.* or *In re D.E.R.* Instead, it is a rule to enforce a judicial order and thus ancillary to judicial authority, not in derogation of legislative intent. Moreover, the rule enforces a right that is basic to a free society, the right of an accused to be arrested within the statute of limitations before charges are stale and evidence is lost. Proceedings under the KJJC are akin to adult criminal proceedings and the same core values protected under the common law are equally at risk in juvenile proceedings. Finally, the rule applied in juvenile proceedings will deter the untimely reach of the KJJC to arrest adults on stale warrants for offenses committed years earlier during their adolescence.

P.R.G.'s appeal affords us a case study as to why the common-law rule should be applied. When P.R.G. was 15 or 16 years of age, he ostensibly consumed alcohol in violation of K.S.A. 41-727(a), a

class C misdemeanor. A complaint was promptly filed with an arrest warrant issued on October 4, 2006. Notwithstanding that P.R.G. lived in the small town of Viola, Kansas, at all times material, it was not until October 31, 2009, 3 years after the warrant was issued by a judge that P.R.G. was arrested under the warrant. The district court ruled that under K.S.A. 2009 Supp. 38-2327 the action was commenced when process was issued and denied the motion to dismiss.

If P.R.G. had been subject to prosecution as an adult, under the undisputed facts, his claim that the statute of limitations had run would have been sustained. See K.S.A. 21-3106(7). At the time of his arrest, P.R.G. was 18 or 19 years old and required to answer a 3-year-old complaint for a class C misdemeanor in juvenile court. We conclude that as a matter of law, his conviction must be vacated and the underlying juvenile proceeding dismissed.

In the case of J.C.T., the underlying offense occurred on October 8, 2007, and the arrest warrant was executed on October 31, 2009. Under this acknowledged time line we are not persuaded that the determination can be made on appeal whether the warrant was executed without unreasonable delay. Accordingly, we remand for further evidentiary hearing.

Affirmed in part, reversed in part, and remanded with directions.