(316 P.3d 811)
No. 108,856

In the Matter of the Care and Treatment of PAUL SYKES.

Opinion filed January 10, 2014.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, for appellee.

Before MALONE, C.J., MCANANY and STANDRIDGE, JJ.

MCANANY, J.: Between 1969 and 1987, Paul Sykes accumulated an extensive criminal history. In 1987, he broke into a house in Kansas City occupied by Sharita Watson Calhoun and her sister, Charzetta Wesley Kimble. He approached Sharita with his pants open and his penis exposed. He grabbed her and said he wanted to "do something" with her. Sharita resisted, and Sykes struck both women. The women screamed, and their brother arrived and broke down the door. Sykes fled but was later captured and charged. In January 1988, he was convicted of aggravated sexual battery and sent to prison. Aggravated sexual battery is a sexually violent offense as the term is used in K.S.A. 59-29a02, a provision in the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*

Sykes was scheduled to be released from prison in April 2007. In March 2007, in advance of that release date, the State commenced this civil care and treatment case, seeking to have Sykes committed for treatment as a sexually violent predator under the Kansas Sexually Violent Predator Act.

At the time the State commenced this suit, Sykes was being held by the Kansas Department of Corrections at the Larned State Hospital. Sykes had a long history of treatment for mental illness, primarily paranoid schizophrenia. He had been in either the Larned State Hospital or the Osawatomie State Hospital approximately six times before the 1987 events that led to his 1988 conviction. After

this conviction, Sykes was in and out of the Larned State Hospital numerous times during the period of his incarceration. During this period he was found to be sexually preoccupied and was found masturbating on the ward, particularly in front of females. He exposed and fondled himself and made inappropriate sexual comments in front of the hospital staff. He threatened female staff members and grabbed them in sensitive areas. He was subject to disciplinary proceedings at the Larned Correctional Mental Health Facility for lewd acts. At one point Sykes was released on parole, but his parole was revoked, and he was returned to prison when he failed to complete a community sex offender treatment program.

After the State brought this current action, Sykes waived the preliminary hearing required by K.S.A. 59-29a05 and stipulated that there was probable cause to believe that he was a sexually violent predator. The court sent Sykes to Larned for a psychological evaluation. At Larned, Sykes was evaluated by Dr. John Reid in May 2007. Dr. Reid found that Sykes suffered from paranoid schizophrenia as well as exhibitionism and alcohol dependency. Sykes also had an antisocial personality disorder and borderline intellect. Sykes scored moderate to high on tests for sexual recidivism.

Mark Roberts, a licensed clinical psychotherapist, examined Sykes and concluded that due to Sykes' schizophrenia, he was incompetent to stand trial in these care and treatment proceedings. He recommended that Sykes be transferred to Larned for treatment.

The district court, acting on Roberts' recommendation, found that Sykes was not competent to stand trial pursuant to K.S.A. 22-3302, a provision applicable to persons charged with a crime. The court ordered that Sykes be sent to Larned for up to 90 days for evaluation and treatment pursuant to K.S.A. 22-3303, another provision applicable to criminal defendants.

There followed a civil commitment proceeding for the care and treatment of Sykes as a mentally ill patient, but that action was later dismissed for reasons unrelated to this appeal. We need not discuss it further.

Following yet another mental evaluation of Sykes in February 2011, Dr. Roy Daum found Sykes incompetent to stand trial ap-

plying the standards for evaluating a defendant facing a criminal trial. But at the court's hearing 2 months later, the court noted that this is a civil, not a criminal, proceeding. In essence, the court determined that Sykes did not have to be mentally competent in order for these civil commitment proceedings to go forward. The case was set for a jury trial in September 2012.

At trial, Sykes waived a jury, and the matter was tried to the court. Charzetta and Sharita, the victims of Sykes' aggravated sexual battery, testified to the facts that led to that conviction. Dr. Reid testified that Sykes meets the criteria for a sexually violent predator. On cross-examination, he testified that Sykes' antisocial personality disorder was driving his behavior, not his schizophrenia. He noted that there is no necessary connection between schizophrenia and sexually violent conduct.

Dr. Barnett testified for Sykes. He conceded that Sykes probably meets the criteria for a sexually violent predator.

Sykes testified on his own behalf. He was taking his medications at the time of his trial and did not display the grossly disordered thinking described earlier in his medical records. He described the events leading to his conviction. He had been drinking, smoking marijuana, and "having a little fun" that night. He broke into the house in order to steal something, not to have sex with the women in the house. When asked about their testimony that he had "hit them and pulled their night clothes," Sykes responded: "Yeah, I know, I was listening. I didn't do nothing to them." He denied having the zipper on his trousers open and his penis exposed. When asked about his failure to complete the sex offender treatment program at Lansing Correctional Facility, Sykes responded, "Because of the simple fact that I just didn't know no better. If I had known that I would be up in such a degree right now, I would've stayed in and took it."

In closing argument, Sykes' counsel tacitly conceded that the testimony was sufficient to support a finding that Sykes was a sexually violent predator. "[F]rom the beginning, I have been against having a trial where the respondent is not competent, and I plan to appeal on that issue alone . . . ."

The court found that Sykes was a sexually violent predator, and this appeal followed.

On appeal, Sykes claims that the district court erred in not ordering a stay of the final hearing until he was found competent to stand trial. He contends that even in these civil proceedings, because commitment for *any* purpose is a significant deprivation of liberty, he was entitled to the due process protection of being competent to stand trial. He seems to take the position that while a mentally ill person who cannot comprehend the commitment process may be committed for care and treatment under our traditional care and treatment statutes, K.S.A. 59-2945 *et seq.*, a sexually violent predator who is similarly mentally ill may not be committed under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*

We review de novo Sykes' claim that his constitutional right to due process has been violated. Freedom from physical restraint is at the core of the liberty protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As a civilly committed resident in Kansas' sexual predator treatment program, Sykes has the right to assert a claim of an alleged violation of his liberty interest. *Johnson v. State*, 289 Kan. 642, 649-50, 215 P.3d 575 (2009).

The State may, consistent with substantive due process requirements, involuntarily commit persons who are unable to care for themselves or are dangerous to others due to their mental impairment. The State's interest in providing treatment for such persons and protecting the public prevails over the individual's interest in being free from confinement. 289 Kan. at 650. The question here, then, is whether due process requires that Sykes be mentally competent in order for the State to proceed to have him declared to be a sexually violent predator.

The Kansas Legislature enacted the Sexually Violent Predator Act to accomplish the following:

"The legislature finds that there exists an extremely dangerous group of sexually violent predators who have a mental abnormality or personality disorder and who are likely to engage in repeat acts of sexual violence if not treated for their mental abnormality or personality disorder. Because the existing civil commitment pro-

cedures . . . are inadequate to address the special needs of sexually violent predators and the risks they present to society, the legislature determines that a separate involuntary civil commitment process for the potentially long-term control, care and treatment of sexually violent predators is necessary. The legislature also determines that because of the nature of the mental abnormalities or personality disorders from which sexually violent predators suffer, and the dangers they present, it is necessary to house involuntarily committed sexually violent predators in an environment separate from persons involuntarily committed under K.S.A. 59-2901 *et seq.* and amendments thereto." K.S.A. 59-29a01.

The Act's constitutionality was upheld in *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). See *In re Care & Treatment of Colt*, 289 Kan. 234, 240-41, 211 P.3d 797 (2009).

Under our statutes for the care and treatment of mentally ill persons, K.S.A. 59-2945 *et seq.*, persons who are mentally ill may be involuntarily committed for care and treatment. K.S.A. 59-2946(f)(1). One of the criteria for a mentally ill person subject to involuntary commitment is the person's lack of capacity to make an informed treatment decision. This includes a person who, by reason of a mental disorder, cannot understand "the nature and effects of hospitalization or treatment or is unable to engage in a rational decision-making process regarding hospitalization or treatment." K.S.A. 59-2946(f)(2). Persons who are unable to understand the nature of involuntary commitment proceedings under the Act are frequently the subject of such proceedings. To hold otherwise would create a Catch-22 in which a person with so severe a mental illness that the person does not understand anything that is going on around him or her could not be committed for care and treatment until the mental illness is cured or ameliorated.

The Court in *Hendricks* observed that it had "sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' " 521 U.S. at 358. The Court stated: "We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." 521 U.S. at 357. In this regard, the Court noted: "The numerous procedural and evidentiary protections afforded here demonstrate that the Kansas Legislature has

taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards." 521 U.S. at 364. Further, the *Hendricks* Court recognized that the purpose of the Kansas Sexually Violent Predator Act is to treat, not punish, the person confined. 521 U.S. at 365-69. Thus, the proceedings are civil in nature, not criminal.

We pause to note that Sykes relies on K.S.A. 22-3302, which provides that any time after a defendant has been *charged with a crime* and before pronouncement of his sentence, the defendant (or his counsel) may request a determination of his or her competency to stand trial. Here, Sykes was not being charged with a crime. These proceedings are civil in nature. K.S.A. 22-3302 does not apply.

Sykes also argues that these proceedings are comparable to proceedings under the Juvenile Justice Code, under which juveniles have a statutory right to a competency evaluation. But proceedings under Kansas' Juvenile Justice Code are now viewed as criminal proceedings. See *In re P.R.G.*, 45 Kan. App. 2d 73, 81, 83, 244 P.3d 279 (2010) (stating the Juvenile Justice Code is "akin" to adult criminal proceedings, so that juveniles may be entitled to constitutional protections that are extended to adult offenders).

Returning to *Hendricks*, the court characterized patients confined and treated under violent sexual predator laws as members of a subclass of the general class of persons confined under our traditional statutes for the care and treatment of mentally ill persons. "It thus cannot be said that the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty." 521 U.S. at 357.

All of this begs the question raised by Sykes' contention on appeal: If persons who are so mentally ill that they cannot understand the nature of their commitment proceedings can be committed for care and treatment under K.S.A. 59-2945 *et seq.*, why should we treat persons believed to be sexually violent predators any differently?

In *In re Commitment of Weekly*, 2011 IL App. (1st) 102276, 956 N.E.2d 634, which involved a civil commitment action under the Illinois Sexually Violent Persons Commitment Act, counsel was un-

able to communicate with his clients who suffered from mental health disabilities. Counsel questioned the fitness of each of the five respondents to stand trial and sought court-ordered mental examinations, which the trial court refused to order.

On appeal, the court determined that there was no due process right to an evaluation in these civil proceedings. 2011 IL App. (1st) 102276, ¶ 70. The court noted numerous procedural requirements of the Illinois Act which ensured that the risk of erroneous deprivation of liberty was slight. Respondents were represented by counsel, and the court's ultimate determination as to whether a person is deemed a sexual predator is mostly based on psychologists' reports and the person's prior offenses. Any chance that the respondent's mental incompetence would significantly impair his contribution to these civil proceeding was minimal.

Examining laws for the commitment and treatment of sexually violent offenders in other states, the court observed that seven out of eight states have determined there is no right to a fitness evaluation under their respective sexually violent predator acts. 2011 IL App. (1st) 102276, ¶¶ 58-69; see *e.g.*, *Moore v. Superior Court*, 50 Cal. 4th 802, 824-25, 829, 114 Cal. Rptr. 3d 199, 237 P.3d 530 (2010) (holding defendant in a sexually violent predator proceeding lacks due process right to competency, noting the nature of the proceeding limits the defendant's involvement in the proceeding, there are numerous procedural protections provided for in the act, and the State has a substantial interest in protecting citizens from sexual predators and providing proper treatment for offenders); *In re Detention of Cubbage*, 671 N.W.2d 442, 444-45, 447-48 (Iowa 2003) (holding respondent does not have statutory or constitutional right to a competency determination under Iowa's sexually violent predator commitment proceeding, reasoning the proceeding is not criminal); *State ex rel. Nixon v. Kinder*, 129 S.W.3d 5, 9-11 (Mo. App. 2003) (holding due process does not require that persons subject to proceedings under Missouri's sexually violent predator commitment act be competent to understand the proceedings, noting civil commitment for sexually violent predator treatment "shares no parallel" with competency determinations in criminal trials).

Like the Illinois Act, the Kansas Act provides respondents with numerous procedural protections. Sykes was entitled to a hearing on the State's petition to determine if there was probable cause to believe that he is a sexually violent predator before the case could proceed. See K.S.A. 59-29a05(b) and (c). Sykes was entitled to be represented by counsel, just as would any mentally ill person in a traditional care and treatment case. See K.S.A. 59-29a06(b) and K.S.A. 59-2959(b). Similarly, Sykes had the right to retain experts and demand a jury trial, just as would any mentally ill person in a traditional care and treatment case. See K.S.A. 59-29a06(b) and (c), and K.S.A. 59-2965(b) and (c). If the State wished to proceed under the Act, it had to meet specific deadlines. Written notice of intent to proceed had to be given to the attorney general and a multidisciplinary team within 90 days of certain events outlined in the statute. K.S.A. 59-29a03(a). Within 30 days of the multidisciplinary team receiving such notice, the team had to make an assessment as to whether the person met the definition of a sexually violent predator and had to notify the attorney general of its assessment. K.S.A. 59-29a03(d). Once it was determined the person met the definition of a sexually violent predator, the attorney general had 75 days to file a petition. K.S.A. 59-29a04(a).

At trial, the factfinder had to apply the more stringent beyond a reasonable doubt standard in determining whether Sykes was a sexually violent predator. K.S.A. 2012 Supp. 59-29a07(a). Had Sykes insisted on a jury, the jury's determination would have had to be unanimous. See K.S.A. 2012 Supp. 59-29a07(a). Having been committed under the Act, Sykes is now entitled to an annual review to determine whether his abnormality or disorder has changed so that he is safe for transitional release. K.S.A. 59-29a08(a) and (c).

The Act establishes various procedural safeguards so that persons mentally incompetent to stand trial in a criminal case in which they were charged with a crime of sexual violence can, nevertheless, be found to be sexually violent predators. K.S.A. 59-29a03(a) specifically provides for sexually violent predator commitment proceedings for persons who have been charged with a sexually violent offense but have been found to be incompetent to stand trial; persons who have been found not guilty of a sexually violent offense

by reason of insanity; and persons who have been found not guilty of a sexually violent offense because of a mental disease or defect.

K.S.A. 2012 Supp. 59-29a07(g) provides that if a person charged with a sexually violent offense has been found incompetent to stand trial but the State seeks to have such person committed for treatment under the Act based upon that sexually violent conduct, the court must first hear evidence to determine whether the person actually committed the acts charged. The statute provides that all constitutional rights available to defendants at criminal trials shall apply at this evidentiary hearing *other than* the right to be tried only while competent. After the hearing, the court must make specific findings as to whether the person actually committed the acts charged, the extent to which the person's incompetence or disability affected the outcome of the hearing (including its effect on the person's ability to consult with and assist counsel and to testify on his or her own behalf), the extent to which the evidence could be reconstructed without the assistance of the person, and the strength of the State's case. If the court ultimately finds the person did commit the acts charged, the State may go forward with commitment proceedings under the Act.

Thus, under K.S.A. 2012 Supp. 59-29a07(g), if a person has merely been charged with a sexually violent offense but the underlying facts of the State's allegations have not been proven beyond a reasonable doubt in a criminal trial, this statute assures that the evidence admitted at the commitment procedure is constitutionally sound.

It is apparent that under the Act's statutory scheme there are many meaningful procedural safeguards to protect an individual such as Sykes who has been diagnosed with a mental illness at the time of his commitment proceedings under the Act.

Sykes does not challenge the district court's finding that he is a sexually violent predator. As a sexually violent predator, Sykes is a member of the subset of mentally ill persons who are subject to involuntary commitment. At trial, the focus of his counsel was not on whether he was in need of treatment, but on the type of setting in which his illness could best be addressed. He argued to the court, "If his problem is his mental problems, is there something

other than a placement at a sexual predator treatment facility that would be better for him?" But the legislature recognized that there should be a different, more secure setting for treatment of sexually violent predators, in contrast to the treatment setting for other mentally ill patients, when the legislature found that "existing civil commitment procedures . . . are inadequate to address the special needs of sexually violent predators and the risks they present to society." K.S.A. 59-29a01. The legislature found it necessary "to house involuntarily committed sexually violent predators in an environment separate from persons involuntarily committed under K.S.A. 59-2901 *et seq.*" K.S.A. 59-29a01. This is in keeping with the State's interest in protecting mentally ill patients confined and treated in traditional care and treatment settings from sexually violent predators. As stated by the Missouri Court of Appeals in *Nixon*:

"To rule that the [State] must pursue civil commitment under the general civil commitment statutes rather than the sexually violent predator statutes would defeat the purpose of the sexually violent predator determination that a person determined to be a sexually violent predator needs specialized sexually violent predator treatment. To adopt the rationale that [an individual] does not possess the competency to proceed to trial to determine whether he is a violent sexual predator, and if so determined, to subject him to the specific treatment contemplated for the condition by the statute would thwart the proper exercise of legislative authority for the health and welfare of the state's citizens but it would also jeopardize [the individual's] receipt of proper rehabilitating treatment." 129 S.W.3d at 10.

Kansas has an interest in ensuring that persons such as Sykes, who are found to be sexually violent predators, are committed in facilities that are designed to manage their special needs—needs which differ from those of persons suffering from other disorders. Committing Sykes for traditional care and treatment of his mental illness under K.S.A. 59-2945 *et seq.* because he is not competent to stand trial under a criminal law standard would frustrate the legitimate purposes of the Act in view of the many procedural safeguards built into the Act to protect Sykes' due process rights.

We conclude that the district court did not err in proceeding with commitment proceedings pursuant to Kansas' Sexually Violent Predator Act notwithstanding Sykes' mental illness.

Affirmed.