The opinion of the court was delivered by
Rosen, J.:
Despite having been found incompetent to assist in his own defense, Paul Sykes was adjudicated a sexually violent predator. On review of the decision by the Court of Appeals, we affirm the adjudication.
In 1987, Sykes was convicted in Wyandotte County of burglary and aggravated sexual battery, based on an incident in which he broke into a house and hit a couple of young female occupants, who observed that his pants were unzipped and his penis was visible. He spent much of his confinement at Lamed State Hospital. His sentence expired in 2007. Prior to the expiration of his sentence, the State filed a petition in Wyandotte County seeking to have him adjudicated a sexually violent predator.
*821 The district court found probable cause to bebeve that Sykes was such a predator and ordered him transferred to Lamed State Hospital for evaluation. In 2008, the district court determined that Sykes was not competent to stand trial. The court ordered that he continue to be evaluated and treated at the Lamed facility under K.S.A. 22-3303. Following the evaluation, the court found that Sykes was not competent to stand trial and was unlikely to become competent in the foreseeable future and that involuntary civil commitment proceedings should be commenced.
In 2009, the district court of Pawnee County issued an order holding that K.S.A. 22-3301 et seq. applied only to criminal defendants subject to sexually violent predator proceedings, not to respondents in proceedings for civil commitments in other proceedings. The court accordingly dismissed the proceedings for want of subject matter jurisdiction.
In 2011, following further competency evaluations, the Wyan-dotte District Court issued an order holding that Sykes would not be competent to stand trial in a criminal proceeding. Noting that it was a matter of first impression, the court held that incompetence to answer to criminal accusations is legally distinct from incompetence to answer to a civil complaint, and the court set the matter for trial under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq.
Sykes argued through counsel that a trial in the absence of mental competence violated due process, and he filed a motion seeking leave to take an' interlocutory appeal under K.S.A. 60-2102(c). The district court granted the motion, but the Court of Appeals declined to authorize the interlocutory appeal.
Over Sykes’ objections, the case proceeded to trial. Against his counsels advice, Sykes requested a jury trial. After a jury was impaneled, however, his counsel persuaded him to proceed instead with a bench trial. Noting Sykes’ shifting positions, the court asked him whether he understood what he was doing, and he replied that he did not. With the encouragement of the court, Sykes’ counsel called the office of the Disciplinary Administrator for advice on whether it would be proper for him to represent a client in a bench trial who appeared to be so confused about what his rights were *822 that he could not assist with his defense. The Disciplinary Administrator informed counsel that he would not be in violation of the disciplinary rules so long as his client voiced his approval of proceeding without a jury.
At trial, the State introduced the testimony of tire victims of the 1987 sexual battery and of several psychological experts. One of those experts, Dr. Jane Kohrs, a psychologist, interviewed Sykes for a clinical service report in December of 2006 at Larned after reviewing a significant portion of his records. She was only able to interview him for 45 minutes before he became too upset to continue a dialogue. Dr. Kohrs concluded that Sykes qualified for commitment because he would be unable to prevent a relapse. She noted that Sykes had been cited three times for lewd acts while confined and had exposed himself to and groped female staff members. She ultimately diagnosed him with schizophrenia, an antisocial and narcissistic personality disorder, and substance abuse and borderline intellectual functioning.
Dr. John Reid, a psychologist at Larned, interviewed Sykes twice, first in 2007 and again in 2011. In his first interview, Dr. Reid found that Sykes was not forthcoming about his crime, was unable to stay on his medications, was unable to finish his sexual abuse treatment program, and was unable to acknowledge at-risk situations. Dr. Reid ultimately diagnosed Sykes with schizophrenia, paranoid type with exhibitionism, alcohol dependence, antisocial personality, and borderline intellect. Applying several psychometric tests, Dr. Reid concluded that Sykes had a 39% chance of recidivism within 5 year's, a 45% chance of recidivism within 10 years, and a 52% chance of recidivism within 15 years. He further explained that this was likely an underestimate because it did not capture all of Sykes’ criminal history.
Upon returning to interview Sykes in 2011, Dr. Reid found him more clear, lucid, and cordial, but his final assessment remained that Sykes met the criteria for a sexually violent predator. Dr. Reid recommended that Sykes should go into the Lamed parallel program for treatment. Dr. Reid noted that no one has ever successfully completed this seven-step program.
*823 Dr. Robert Barnett, a psychologist who had interviewed Sykes in the past, testified for the defense. He testified that he did not believe that Sykes qualified for antisocial personality disorder. He also testified that, while Sykes probably met the definition of a sexually violent predator, the treatment in Lamed would probably be ineffective.
Sykes appeared as a witness on his own behalf. His answers to questions from his counsel were generally meandering and nonre-sponsive. The following exchange was typical:
“Q. Well, you heard everybody talking in here about whether you are a sexual predator?
“A. Yeah, that’s what I am saying. You know, she is lying about me beating her. I ain’t beat a damn thing. I run out of the house. It was just a little bitty white house on 13th Street. I seen 13th Street, down on one end and they still on the other end. I seen them every day.”
The district court ultimately ruled that Sykes was a sexually violent predator and ordered him to be committed until such time that it would be safe for him to be at large. He took a timely appeal, and, in a published opinion, the Court of Appeals affirmed the judgment of the district court. In re Care & Treatment of Sykes, 49 Kan. App. 2d 859, 316 P.3d 811 (2014). This court granted Sykes’ petition for review.
Sykes raises a single issue on appeal. He contends that due process requires that a respondent be competent to understand the nature of a sexually violent predator commitment proceeding and be able to assist his counsel in such a proceeding.
Whether a party’s constitutional right to due process has been violated is a question of law subject to de novo review. See State v. Roeder, 300 Kan. 901, 927, 336 P.3d 831 (2014); State v. Turner, 300 Kan. 662, 675-76, 333 P.3d 155 (2014).
Kansas has enacted two parallel schemes for the involuntary civil commitment of individuals whose mental state is such that they may be dangerous to themselves or to others. K.S.A. 59-2945 et seq. establishes procedures for involuntary confinement and treatment of certain people who are mentally ill, who lack the capacity to malee informed decisions concerning treatment, and who are likely to cause harm to themselves or others. K.S.A. 2014 Supp. *824 59-2946(e), (f). The statutory scheme includes protections such as probable cause findings, the right to counsel, the right to a jury trial, a standard of proof beyond a reasonable doubt, and periodic review for determining whether the patient remains mentally ill.
K.S.A. 59-29a01 et seq. sets out procedures specifically tailored to address sexually violent predators, that is, people who have been convicted of or charged with sexually violent offenses and who suffer from mental abnormalities or personality disorders that malees them likely to engage in repeated acts of sexual violence. K.S.A 2014 Supp. 59-29a02(a). The statute satisfies the requirements of due process by providing a range of basic protections, including appointed counsel, a probable cause hearing, appointment of qualified experts for examinations, a juiy trial requiring a unanimous decision, appeals, annual examinations, discharge peti-
tions, and the strictest possible burden of proof on the State. In re Care & Treatment of Hay, 263 Kan. 822, 831, 953 P.2d 666 (1998).
Proceedings under K.S.A. 59-29a01 et seq. are civil, not criminal, in nature. Kansas v. Hendricks, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). As a consequence, the procedures for establishing competence for criminal defendants, K.S.A. 2014 Supp. 22-3302, do not apply. A further consequence of the designation as a civil proceeding is that the abatement requirements of criminal procedure are not invoked. Other protections are provided to incompetent defendants in civil proceedings. See, e.g., United States v. Mandycz, 351 F.3d 222, 225 n.1 (6th Cir. 2003) (under federal rules of civil procedure, incompetent defendants entitled to appointment of guardians ad litem, but mental incompetence not recognized as defense in civil action); K.S.A. 2014 Supp. 60-217(c) (guardian or other fiduciary may defend on behalf of incompetent party in civil proceeding).
A civil commitment for any purpose nevertheless constitutes a significant deprivation of liberty that requires the protection of due process of law. See Addington v. Texas, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); Jackson v. Indiana, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972); Humphrey v. Cady, 405 U.S. 504, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972); In re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); Specht v. Patterson, 386 U.S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967).
*825 In making his argument that the sexual predator proceeding violated his due process rights by subjecting him to confinement without his ability to assist in his own defense, Sykes essentially asks this court to retreat from the established law holding that proceedings under K.S.A. 59-29a01 et seq. are civil in nature. There is no statutory requirement of competence in civil proceedings, and we decline to create one. In Hendricks, the United States Supreme Court found the statutory scheme for confining sexually violent predators to be constitutional on its face. 521 U.S. at 356-60. In Hay, this court determined that the specific protections that the statute provides satisfy the requirements of procedural due process. 263 Kan. at 831-32. The combination of a constitutionally sound confinement procedure with a rule that competence is not required in civil proceedings leads us to conclude that Sykes did not suffer a violation of his due process rights.
The Kansas statute is patterned on a veiy similar statutory scheme enacted in the state of Washington in 1990. See In re Care & Treatment of Hendricks, 259 Kan. 246, 249-50, 912 P.2d 129 (1996). In In re Detention of Morgan, 180 Wash. 2d 312, 330 P.3d 774 (2014), the Washington Supreme Court recently considered an issue much like the one presented now to this court. The Morgan court affirmed the commitment of a respondent who was determined to be incompetent but who was nevertheless adjudicated by a jury to be a sexually violent predator.
Citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Washington court applied a three-part test to determine the extent of protection due to a respondent in an involuntaiy commitment proceeding: (1) the liberty interest at stake; (2) the risk of erroneous deprivation of that liberty interest with tire existing procedures and the probable value, if any, of additional safeguards; and (3) the government interest, including costs and administrative burdens of additional procedures. 180 Wash. 2d at 320-21.
The court then analyzed the statutory scheme in fight of that test. The court agreed that the liberty interest at stake invoked due process requirements. Applying the second part of the test, the court determined that “Robust statutory guaranties ... provide *826 substantial protection against an erroneous deprivation of liberty.” 180 Wash. 2d at 321. These guaranties included the requirement that the State show probable cause, the right to counsel at public expense, the right to present evidence on the respondents behalf, the right to cross-examine adverse witnesses, the right to a jury of peers, the imposition on the State of the burden of proof beyond reasonable doubt, and the burden placed on the State to justify continued confinement by means of an annual review. Finally, the court found that the government had a compelling interest in treating sexual predators and protecting society from their actions. Plousing of sexual predators in the possibly less secure facilities available for the more general population of people committed under the involuntary treatment act would pose a risk to the treatment population and increase the risk of escape, threatening the well-being of society at large. 180 Wash. 2d at 321-22.
At least seven other jurisdictions have reached conclusions consistent with that in Washington. See Moore v. Superior Court, 50 Cal. 4th 802, 829, 114 Cal. Rptr. 3d 199, 237 P.3d 530 (2010) (due process does not require mental competence of individual subject to commitment under Sexually Violent Predators Act); In re Commitment of Weekly, 2011 IL. App. (1st) 102276, §§ 52-53, 956 N.E.2d 634, 647 (2011) (establishing that fitness evaluation does not affect ability to receive a fair commitment trial because of numerous procedural safeguards against erroneous deprivation of liberty); In re Det. of Cubbage, 671 N.W.2d 442, 448 (Iowa 2003) (lack of pretrial competence evaluation causes no deprivation of due process rights); Commonwealth v. Nieves, 446 Mass. 583, 591, 846 N.E.2d 379 (2006) (“robust, adversary character” of commitment proceeding minimizes risk of erroneous commitment of person who is not sexually dangerous; due process is preserved through adversarial process); State ex rel. Nixon v. Kinder, 129 S.W.3d 5, 10 (Mo. App. 2003) (SVP determination, regardless of competency of respondent, not unconstitutional deprivation of liberty); In re Commitment of Fisher, 164 S.W.3d 637 (Tex. 2005) (difference between sexual predator commitment proceedings and conventional commitment proceedings does not make predator proceedings punitive; competency requirement for criminal proceedings inapplicable to civil commitments); In re Commitment of Luttrell, 312 *827 Wis. 2d 695, 754 N. W.2d 249 (2008) (no right to competency evaluation before hearing on sexually violent person status; commitment is for treatment, not punishment, and due process concerns are remote).
The conclusions reached by these courts in other jurisdictions support the conclusion that we reach here. The court is sympathetic to the concerns expressed in the concurring opinion, but deems itself constrained by both the holdings of the United States Supreme Court and the language of the statute.
The crux of the problem with Sykes’ appeal lies in the remedies available to him. The first is to free him from the jurisdiction of State penal and social services until he should become competent to stand trial. This remedy is undesirable, because it releases an individual with violent tendencies into society.
The second remedy is to commit him for treatment as a mentally ill person subject to involuntary commitment under K.S.A. 59-2945 et seq. This remedy, while providing care and treatment for the mental illness, appears to beg the question presented in this appeal: he still ends up institutionalized without being competent to represent himself at a commitment hearing, albeit under a different statutory provision than the Sexually Violent Predator Act.
Although Sykes contends that the treatment for his condition as a sexual predator is not sufficiently targeted to treatment of his other disorders, the State is not required to choose between attacking every aspect of a public danger or not attacking any part of the danger at all. The legislature is free to recognize degrees of harm, and it may address restrictions to those cases where it deems the need to be most clear. Hays, 263 Kan. at 833. In this instance, the State has chosen treatment of the sexual predatory mental defect as having a priority over schizophrenia or other mental disorders.
The decision of the Court of Appeals is affirmed. The decision of the district court is affirmed.
[[Image here]]